THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
JOSEPH FERGUSON, Appellant.

First Department, February 20, 1986

## APPEARANCES OF COUNSEL

*Sharon D. Gray* for appellant.

*Michael J. Eng* of counsel *(Billie Manning* with him on the brief; *Mario Merola, District Attorney,* attorney), for respondent.

## OPINION OF THE COURT

ELLERIN, J.

The facts in this case compel the conclusion that defendant was deprived of a fair trial because of the ineffective assistance of his original counsel which so permeated all the subsequent proceedings herein that defendant was not provided with "meaningful representation" and the defense of his case was prejudiced.

Defendant was arrested on the night of October 3, 1978 for the crimes of criminal possession of a weapon in the third and fourth degrees based upon his possession of a pistol and a blackjack, which were discovered following a search by Police Officers Joseph Kelly and Robert Fleming. According to their trial testimony, their suspicions were aroused when they saw defendant walking briskly on Prospect Avenue in The Bronx while carrying a shoulder bag, the officers claiming that they had never before seen a man carrying what they termed "a woman's bag". They, therefore, stopped defendant and asked him for identification and as defendant unzipped the shoulder bag to retrieve his identification, Officer Kelly flashed his light into the bag and saw something shiny. Kelly then reached into the bag and pulled out a blackjack. The officers further stated that, as they arrested Ferguson, "a little scuffle" ensued during which they observed him reach for his right front pocket and that after Ferguson was handcuffed, Kelly reached into Ferguson's right front pocket and retrieved a gun.

A Legal Aid attorney was assigned to represent Mr. Ferguson on October 10, 1978. On October 13, 1978, Ferguson was paroled, pursuant to CPL 180.80. Subsequently, he was indicted for criminal possession of a weapon in the third and fourth degrees. During the ensuing 11 months defendant's counsel neither requested a *Mapp* hearing, nor made any other motions. Throughout this period defendant regularly appeared in court whenever required.

On September 19, 1979, defendant did not appear in court and a bench warrant was issued. Defendant later explained that at the previous appearance on September 13, 1979, his lawyer told him, in open court, that he was excused and need not return to court until the lawyer called him.

In light of subsequent developments, it is important to note that defendant did not flee the jurisdiction, nor did he in any way attempt to hide. On the contrary, he continued to openly reside at the same address in The Bronx and remained employed at the same job, where he was a member of a union, also in The Bronx. It appears that he was even in contact with the criminal justice system during this period. As a witness to a homicide in 1980, he appeared at a local police precinct on several occasions to assist detectives in their investigation.

Defendant continued to live his normal life in The Bronx until February 14, 1983, when he was arrested for theft of services on the subway and it was discovered that the warrant in this case was outstanding. He was returned on the warrant and 18-b counsel was assigned on March 25, 1983. At a bench conference on June 1, 1983, his newly assigned counsel, during a discussion about a possible *Mapp* motion, was advised by the Justice then presiding that he could make a motion for such relief, addressed to the facts only, and was told not to be concerned with the issue of untimeliness because of the special circumstances involved. However, when counsel formally moved for such hearing on June 20, 1983, the People vigorously opposed the motion as untimely pursuant to CPL 255.20 (1) and the motion, which was returnable before a Justice other than the one who had presided at the prior conference, was denied on that ground.

Defense counsel thereafter moved for renewal, alleging in his papers the special circumstances herein and the advice of the Justice at the prior conference. While reargument was granted, the original decision denying defendant a suppression hearing was adhered to because of "the lengthy period of time defendant absconded from the jurisdiction of the court".

Defendant then proceeded to trial in October 1983 with the sole evidence being the testimony of the two arresting officers. After two days of deliberations, a mistrial was declared due to the inability of the jury to reach a verdict.

It may be noted that it was after the mistrial that defendant was indicted for the crime of bail jumping in the first degree on October 27, 1983.

Prior to the commencement of the second trial, defense counsel again moved, this time orally, for a *Mapp* hearing. The trial court denied the motion on the ground that it had already been denied by another Justice of the same court. That trial, at which only one of the arresting officers testified, resulted in a verdict of guilty on the count of criminal possession of a weapon in the third degree. When defendant appeared for sentencing on December 6, 1983, he also entered a plea of guilty to the misdemeanor bail jumping charge.

On this appeal, the critical issue is the impact of the final denial of assigned counsel's most commendable continued efforts to obtain a *Mapp* hearing. The trial court confronted with prior decisions by Judges of coordinate jurisdiction denying such relief, was constrained to similarly rule. This court is not similarly bound by the law of the case doctrine *(Martin v City of Cohoes,* 37 NY2d 162) and, accordingly, we address the denials of the motion for a suppression hearing and the untimeliness issue in the context of the asserted claim of ineffective assistance of defendant's original counsel.

In *People v Baldi* (54 NY2d 137), the Court of Appeals articulated the standards to be applied in determining whether a defendant has been denied the right to effective assistance of counsel as guaranteed by both the Federal and State Constitutions (US Const 6th Amend; NY Const, art I, § 6). While concluding that effective assistance of counsel cannot be measured with yardstick precision but varies according to the unique circumstances of each representation, the court indicated that the constitutional requirement is met so long as the evidence, the law, and the circumstances of a particular case, viewed in totality, reveal that the attorney "provided meaningful representation" *(supra,* at p 147).

The United States Supreme Court has recently engrafted a second prong to its test, holding that to overturn a conviction on this ground, a defendant must show not only professionally unreasonable error by counsel, but also prejudice to the defense to the extent that "but for counsel's unprofessional

errors, the result of the proceeding would have been different" *(Strickland v Washington,* 466 US 668, 694).

Under either analysis, defendant Ferguson did not receive effective assistance of counsel.

In this case, where the only conduct which prompted police intervention was that of a man walking briskly at night while carrying a so-called "woman's" shoulder bag, a neutral fact at best in these times of unisex fashions, it would appear that the actions of these officers in stopping and searching defendant were of highly questionable propriety *(see, People v Howard,* 50 NY2d 583; *People v Davis,* 36 NY2d 280; *People v Lakin,* 21 AD2d 902) and that a suppression motion was of crucial importance. There is a strong likelihood that but for the failure of defendant's original counsel to make such a suppression motion, the result of these proceedings, in which defendant was charged solely with possessory crimes, would have been different.

The materiality of the failure to make a suppression motion on the issue of ineffective assistance of counsel has been addressed by other courts. In *People v Sims* (55 AD2d 629), the Second Department held that in a case where the question of identification was the central issue it was "inexcusable" to neglect to file a timely motion to suppress the identification testimony. In *People v Wagner* (104 AD2d 457) and in *People v Moore* (102 AD2d 898), that court found that failure to seek a *Mapp* hearing when the facts warranted it, even though the motion might not be successful, combined with other omissions in each of those cases, constituted ineffective assistance of counsel requiring reversal. The Fourth Department, in reviewing the issue in relation to possessory charges, held that the "critical nature of that seizure and the evidence which flowed therefrom clearly required that it be challenged" and found that the failure to make such a suppression motion, together with other errors in that case, constituted ineffective assistance of counsel warranting reversal *(People v Sanin,* 84 AD2d 681, 682).

A determinant of the adequacy of counsel's performance is the degree to which counsel's errors impact on "basic points essential to the defense" *(see, People v Droz,* 39 NY2d 457, 462; *People v Roff,* 67 AD2d 805). Clearly, in the instant case the propriety of the search was not only basic but it was "the" issue essential to the defense. On that issue the case stood or fell, and the failure of defendant's initial counsel to address that issue promptly was a fatal deficiency.

While after his assignment to the case, defendant's second counsel promptly sought to obtain the crucial *Mapp* hearing, his persistent and repeated efforts in that regard were rendered nugatory by the "untimeliness" of the application. The fault for that "untimeliness" lay solely at the door of the original counsel who failed to move for such hearing during the 11 months that the case was pending prior to the issuance of the bench warrant and the denial of new counsel's application for that relief was an abuse of discretion under these circumstances. It impermissibly charged defendant with the untoward consequences emanating from his prior counsel's inadequate and, on its face, ineffective representation.

The attempt to use the fact that "defendant absconded for 4½ years", on reargument, as a further basis for justifying denial of the suppression hearing that was so essential to the defense of his case, is also unsupportable. Such conclusion is not only at variance with the facts of defendant's continued residence and employment in The Bronx, making him readily accessible to the execution of a warrant, but, more significantly, his nonappearance, after the case had been pending for 11 months, was in no way relevant to his original counsel's failure to make the necessary motion for a *Mapp* hearing within the time limits prescribed by CPL 255.20. The 45-day statutory period had expired long before defendant's failure to appear on September 19, 1979.

The denial of these prior motions for a *Mapp* hearing, by which the trial court was bound, served to deprive defendant of a fair trial and derived directly from the ineffective assistance of his original attorney.

Since no hearing was ever held on the issue of the propriety of the search and seizure, this matter must be remanded for a *Mapp* hearing and this appeal held in abeyance pending the determination of the suppression issue.

Accordingly, the appeal from the judgment of the Supreme Court, Bronx County (Archie A. Gorfinkel, J.), rendered December 6, 1983 which convicted defendant of criminal possession of a weapon in the third degree and bail jumping in the first degree and sentenced him to concurrent 3 to 6 years and 1 year terms, should be held in abeyance and the case remanded forthwith for further proceedings consistent herewith.

MURPHY, P. J., SULLIVAN and KASSAL, JJ., concur.

Determination of the appeals from two judgments of the Supreme Court, Bronx County, both rendered on December 6,

1983, held in abeyance and the case remanded forthwith for further proceedings consistent with the opinion herein.