■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ADROBER GARCIA, Also Known as ANDROBAR GARCIA, Also Known as ANDROBER GARCIA, Appellant.—Appeal from judgment, Supreme Court, New York County (Clifford A. Scott, J., at pretrial *Huntley* hearing, trial, and sentence), rendered March 11, 1985, which, after a jury trial, convicted defendant of the crime of murder in the second degree (Penal Law

§ 125.25) and sentenced him to an indeterminate term of imprisonment from 25 years to life, is held in abeyance, and the matter remanded for a hearing, as to whether defendant was denied the effective assistance of counsel.

Order of the same court and Justice, entered October 24, 1986, which denied, without a hearing, defendant's motion, pursuant to CPL 440.10, to vacate the judgment, is unanimously reversed, on the law and the facts, and the motion is granted to the extent of remanding the matter to Trial Term to hold an evidentiary hearing on the issue of whether the defendant was denied the effective assistance of counsel.

Sometime after midnight on July 18, 1984, pursuant to information he had received from a private citizen, New York City Police Officer Joseph Clanton went to the rear courtyard of 1505 St. Nicholas Avenue, between 185th and 186th Streets, Manhattan, where he found the body of a person, later identified as Mr. Wilson Cabrera (Mr. Cabrera), lying in a pool of blood. A subsequent autopsy indicated that Mr. Cabrera's death had been caused by a .38 caliber bullet to the brain.

During the following week, New York City Police Detective John Grunert (Detective Grunert) led a police team investigating Mr. Cabrera's homicide. On July 24, 1984, in connection with this investigation, Detective Grunert sought a warrant to search defendant's person and his dwelling place, which was a room located in a basement apartment used as a brothel, for a loaded firearm. In his affidavit, in support of the application for the search warrant, Detective Grunert stated, in pertinent part, that during the past week (note: July 18th through July 24th) he had several conversations with a woman, whom he referred to in the affidavit by the name of "Jane Doe"; Ms. "Jane Doe" informed him that she worked as a prostitute in the subject brothel, and she told him: the brothel operated from 11:00 P.M. to 5:00 A.M.; the defendant, who was known to her by the nickname "Pedro", lived in the brothel and was employed as the brothel's bartender and bouncer; inside the brothel, on the evening of July 20, 1984, and into the early morning hours of July 21, 1984, she observed "Pedro" in possession of a loaded firearm; and, when the brothel is open, the firearm is kept inside those premises. On the basis of the allegations contained in Detective Grunert's affidavit, a New York City Criminal Court Judge issued a search warrant, dated July 24, 1984, which authorized the police to search the defendant's person, and the subject basement apartment, for a loaded firearm.

Thereafter, at approximately 3:00 A.M. on July 25, 1984,

Detective Grunert and several police officers went to the basement apartment brothel to execute the search warrant. Even though they were armed with a search warrant, and not an arrest warrant, and although these officers did not find a loaded firearm or other contraband on the person of the defendant, or in his dwelling place inside the brothel, or anywhere else in the brothel, they arrested defendant, and transported him in handcuffs to the 34th Precinct for interrogation.

While in custody, and for most of the time in handcuffs, at the precinct, defendant was advised of his *Miranda* rights in Spanish, and he agreed to speak to the police. Subsequently, during the interrogation, which was conducted over many hours, defendant confessed, in both oral and written statements, that he had shot victim Mr. Cabrera in the head. Later, defendant accompanied the police to the scene of the crime and reenacted the details of the murder. Finally, defendant described the killing to an Assistant District Attorney (ADA) in a videotaped statement.

Following defendant's indictment for the crime of murder in the second degree, and his arraignment on that charge, defendant's trial counsel moved for a pretrial *Huntley* hearing to suppress the statements defendant made to the police and the ADA. After the *Huntley* hearing, at which the People as well as the defense presented evidence, the court denied defendant's suppression motion.

On January 8, 1985, the defendant proceeded to trial on the charge. During the trial, defendant put in a defense, which included his own testimony. Thereafter, on January 17, 1985, a jury found him guilty of murder in the second degree, and he was sentenced, as mentioned *supra.*

Subsequently, defendant moved to vacate the verdict, pursuant to CPL 440.10, on the ground that his trial counsel had provided him with ineffective counsel, since that counsel had neither in the pretrial stages of the case, nor during the trial, raised the issue of whether the police had legally arrested the defendant. Without holding a hearing, the trial court denied defendant's motion. Subsequently, by order dated November 25, 1986, this court granted leave to defendant to appeal the denial of that motion.

We held in *People v Ferguson* (114 AD2d 226, 230 [1st Dept 1986]) that "[a] determinant of the adequacy of [defense] counsel's performance is the degree to which counsel's errors impact on 'basic points essential to the defense' *(see, People v Droz,* 39 NY2d 457, 462; *People v Roff,* 67 AD2d 805)".

Since in the instant case the police never recovered the murder weapon, or found an eyewitness to the crime, the incriminating statements made by defendant, after his arrest, obviously furnished the basis for the indictment and conviction of defendant. Therefore, we find that the issue of the legality of defendant's arrest should have been a cornerstone of the defense, in view of the fact that, if the arrest was held to be illegal, then the incriminating statements resulting from such an illegal arrest would have been suppressed, under the "fruit of the poisonous tree" doctrine *(see, United States v Crews,* 445 US 463, 471-473 [1980]; *People v Dodt,* 61 NY2d 408, 417 [1984]).

After reviewing the record, we find that there are numerous legal grounds upon which defense counsel could have challenged the legality of the arrest in the instant case. We set forth several of these grounds, as follows:

1. In view of the fact that the search warrant was issued based only on information furnished by a prostitute, who was referred to as "Jane Doe", defense counsel could have contended that the warrant was issued without probable cause *(see, Dunaway v New York,* 442 US 200 [1979]);

2. In the case of *Barr v County of Albany* (50 NY2d 247, 255 [1980]), the Court of Appeals ruled that: "While it can be said that a search warrant sanctions the entrance by law enforcement officers upon private property to conduct a search within the confines of the warrant, it by no means lends judicial approval to the arrests of those persons found thereon. A search warrant and an arrest warrant serve distinct functions in the law (compare CPL art 690, with CPL art 120)". Examination of the search warrant issued herein indicates that, while it authorized the search of the premises, mentioned *supra,* it did not authorize the police, who execute the search warrant, "to * * * arrest * * * those persons found [on the premises]" *(Barr v County of Albany, supra,* at 255). The police did not recover any firearm from either the defendant's person, or his dwelling place, or anywhere else in the brothel. Since the subject search warrant did not authorize any arrest, defense counsel could have contended the arrest of defendant was without probable cause;

3. The United States Supreme Court held, in the case of *Payton v New York* (445 US 573 [1980]), that, except in the presence of consent or exigent circumstances, an arrest is tainted if the police arrest a defendant in his dwelling place without an arrest warrant. Since, it is undisputed, in the

instant case, that defendant was not arrested upon the basis of an arrest warrant, again defense counsel could have contended the arrest lacked probable cause; and

4. During the trial, Detective Richard Nieves (Detective Nieves) testified as a rebuttal witness for the People. In the course of his testimony, Detective Nieves admitted that, while assisting in the execution of the search warrant, he, without provocation from the defendant, punched the defendant in the face, and subsequently handcuffed him. In view of the testimony of Detective Nieves, mentioned *supra,* defense counsel could have moved to reopen the *Huntley* hearing upon the basis that defendant's arrest was illegal.

Based upon our analysis, *supra,* we find that Trial Term erred in denying defendant's motion, without a hearing, since it is not clear from the record whether defense counsel's failure to raise the issue of the legality of defendant's arrest was due to ineffectiveness of counsel or trial strategy *(People v Brown,* 45 NY2d 852, 854 [1978]).

Accordingly, we hold the appeal from the judgment in abeyance, and grant defendant's CPL 440.10 motion to the extent of remanding the matter to Trial Term for an evidentiary hearing. Concur—Murphy, P. J., Sullivan, Ross, Rosenberger and Smith, JJ.