THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
CARLTON HALE, Appellant.

First Department, December 8, 1988

APPEARANCES OF COUNSEL

*Thomas E. Bohan* of counsel *(Lisa Feiner* with him on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

*Stephen L. Holtz* for appellant.

**OPINION OF THE COURT**

WALLACH, J.

Shortly after being indicted for robbery, defendant made an omnibus motion seeking, *inter alia,* suppression of "all evidence of any pre-trial identification procedures" on the ground that there had been "at least 3 separate line-ups". Characterizing this as a "request for a *Wade* hearing", the People opposed "since defense counsel has failed to state sufficient facts to justify such a hearing." Although the court's decision is not included in the record, we are told by the parties that the motion was denied, and we assume that it was for the reasons urged by the People. Certainly, there is no readily apparent reason why the reliability of an identification should be suspect, as a matter of law, simply because more than one lineup was conducted *(see,* CPL 710.60 [3] [b]).

At trial, defendant, who took the stand, denied any involvement in the crime, suggesting that his mere presence at the crime scene, a subway platform, may have caused the victim and his companion to misidentify him as one of the at least six persons who attacked the victim in the course of robbing him of jewelry that he was wearing. On the question of identification, the People, for their part, had the victim and his companion identify defendant in court, but also placed considerable reliance, especially in summation, on the station house identifications made of defendant by these two eyewitnesses about three hours after the crime. This station house viewing took place after the victim and his companion had been informed by the police, while en route to the station house, that defendant, who was sitting alone in a "holding pen" or cell at the time of the viewing, was a suspect. Other evidence of guilt adduced at trial included, most notably,

defendant's possession, when apprehended, of jewelry identified as the avails of the robbery by the victim at the station house immediately before he and his companion were together taken to the holding pen to view defendant.

■ Defendant appeals his conviction on the ground that a *Wade* hearing was essential to a fair trial, and that he was deprived of a *Wade* hearing because of his attorney's ineffectiveness. The People acknowledge that defendant's attorney made a mistake in asserting that defendant was identified in three lineups and not a showup, that the attorney knew, or should have known, that it was in a showup that his client was identified since he was told as much in the People's voluntary disclosure statement, and that defendant would likely have been granted a *Wade* hearing had the facts surrounding the showup been correctly stated in his omnibus motion. Nevertheless, the People argue that this mistake of counsel does not warrant a reversal of defendant's conviction since his performance was otherwise competent, and, when viewed as a whole, afforded defendant a meaningful representation—in other words, that a *Wade* hearing was not essential to a meaningful representation. We disagree.

Conceivably, a *Wade* hearing could have resulted in suppression of not only the showup, but also of any in-court identifications the People might have wished to make, on the ground that the latter would be tainted by the former *(People v Riley, 70 NY2d 523, 531-532, and cases cited therein)*. Thus, to say, as the People do, that counsel's error and its consequence, no *Wade* hearing, were not meaningful is to imply either that defendant would have been convicted even if no eyewitness identification had been made at trial, or that a *Wade* hearing, had one been conducted, would not have resulted in suppression of the eyewitness identifications that were made at trial. The People do make the latter argument, but we find it unpersuasive. Their point, in this respect, is that when pretrial proceedings were pending in this case, the admissibility of station house showups was judged under a "totality of circumstances" standard (citing *People v Adams*, 53 NY2d 241) much more receptive to such evidence than the "per se" standard announced by the Court of Appeals after defendant's trial (citing *People v Riley*, 70 NY2d 523) and relied upon by his appellate counsel in attacking the suggestiveness of the showup. Presumably, the People would have us go to the trial record for the purpose of ascertaining the circumstances in their totality, and then determining that they demonstrate

the showup to have been reliable, but this we will not do for reasons quite apart from questions we have as to the adequacy of the record for such a "totality of circumstances analysis". Suffice to say that station house showups have long been viewed by the courts as by their nature suggestive, and evidence thereof disfavored *(People v Riley, supra,* at 529; *People v Adams, supra,* at 250). Suggestive circumstances typical of station house showups, and making them, at the least, of "highly questionable propriety" *(see, People v Ferguson,* 114 AD2d 226, 230), were attendant at defendant's showup, and it would be risking too much were we to rule, as the People apparently would have us do, that the showup here would have been found reliable had a *Wade* hearing been conducted.

■ Having determined that there should have been a *Wade* hearing, and that defendant was deprived of a meaningful representation by the failure of his attorney to obtain one, the question remains as to the appropriate corrective action on appeal. If, as the People state, evidence of station house showups is now deemed "per se" inadmissible absent a showing of exigent circumstances, it follows that defendant's showup must be suppressed, as a matter of law and without a hearing, assuming the "per se" standard, and not the earlier "totality of circumstances" standard, should be applied by us on appeal. Given the absence of argument by the People as to whether the "per se" standard should be applied retroactively, and given the further involvement of a basic due process right "bear[ing] directly on guilt or innocence" and "designed to reduce the risk that the wrong person will be convicted" *(People v Adams, supra,* at 251), we do not hesitate to apply retroactively a standard which, the People acknowledge, makes evidence of showup identifications of arrested persons held at police stations inadmissible as a matter of law.

As noted, the People on appeal do not contend that defendant would likely have been convicted in the absence of any eyewitness identification whatsoever. Without meaning to prejudice any postappeal view of the case the People might wish to take on a new trial, their case against defendant appears to depend on the admission of at least one of the two in-court identifications made of him at trial. Since those identifications were bolstered by the evidence of the showup— or, given the heavy emphasis placed by the People on the showup, perhaps it is just as accurate to say that the showup was bolstered by the in-court identifications—there must be a

new trial without the admission of testimony concerning the showup *(People v Dodt,* 61 NY2d 408, 417).

A hearing is also required to determine whether the showup affected the in-court identifications made of the defendant by the victim and his companion, rendering them inadmissible as well *(People v Riley, supra,* at 531-532, and cases cited therein). The People contend that the trial record demonstrates that the in-court identifications were not tainted by the showup, but it is well settled that we may not resort to the trial record for the purpose of finding an independent source for in-court identifications *(supra).*

Accordingly, the judgment of the Supreme Court, New York County (Edwin Torres, J.), rendered November 13, 1984, which convicted defendant, after a jury trial, of one count of robbery in the first degree and two counts of robbery in the second degree, and sentenced him, as a predicate violent felony offender, to three concurrent indeterminate terms of imprisonment of from 6 to 12 years, should be reversed, on the law, and the matter remanded for a hearing to determine if there was an independent source for the in-court identifications made of the defendant by the complaining witness and his companion, and for a new trial.

SULLIVAN, J. P., CARRO, MILONAS and ROSENBERGER, JJ., concur.

Judgment, Supreme Court, New York County, rendered on November 13, 1984, unanimously reversed, on the law, and the matter is remanded for a hearing to determine if there was an independent source for the in-court identifications made of the defendant by the complaining witness and his companion, and for a new trial.