THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ADROBER GARCIA, Also Known as ANDROBAR GARCIA, Also Known as ANDROBER GARCIA, Appellant.

First Department, August 31, 1989

**APPEARANCES OF COUNSEL**

*Sandra Guerra* of counsel *(Donald J. Siewert* with her on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

*Sara Bennett* of counsel *(Philip L. Weinstein,* attorney), for appellant.

**OPINION OF THE COURT**

Ross, J.

The issue presented to us on these appeals deals with whether the defendant was deprived of the effective assistance of a trial counsel.

Sometime after midnight on July 18, 1984, pursuant to information he had received from a private citizen, New York City Police Officer Joseph Clanton went to the rear courtyard of 1505 St. Nicholas Avenue, between 185th and 186th Streets, Manhattan, where he found the body of a person, later identified as Mr. Wilson Cabrera (Mr. Cabrera), lying in a pool of blood. A subsequent autopsy indicated that Mr. Cabrera's death had been caused by a .38 caliber bullet to the brain.

During the following week, New York City Police Detective John Grunert (Detective Grunert) led a police team investigating Mr. Cabrera's homicide. On July 24, 1984, in connection with this investigation, Detective Grunert sought a warrant to search defendant's person and his room, for a loaded firearm. The room was located in a basement apartment, used as a brothel. In his affidavit, in support of the application for the search warrant, Detective Grunert stated, in pertinent part, that during the past week (note: July 18th through July 24th) he had several conversations with a woman, who he referred to in the affidavit by the name of "Jane Doe". Ms. "Jane Doe" informed him that she worked as a prostitute in the subject

brothel, and she told him that the brothel operated from 11:00 P.M. to 5:00 A.M.; the defendant, who was known to her by the nickname "Pedro", occupied a room in the brothel, and was employed as the brothel's bartender and bouncer. Inside the brothel, on the evening of July 20, 1984, and into the early morning hours of July 21, 1984, she observed "Pedro" in possession of a loaded firearm; and, when the brothel is open, the firearm is kept inside those premises. On the basis of the allegations contained in Detective Grunert's affidavit, a New York City Criminal Court Judge issued a search warrant, dated July 24, 1984, which authorized the police to search the defendant's person, and the subject basement apartment, for a loaded firearm. Thereafter, at approximately 3:00 A.M., on July 25, 1984, Detective Grunert, and a team of police officers, including Detective Richard Nieves (Detective Nieves), went to the basement apartment brothel to execute the search warrant.

Subsequent to entering the brothel, Detective Nieves, who had a detailed description of the defendant, was taken by one of the occupants to defendant's room, and he knocked on that door. In his trial testimony Dectective Nieves stated that, as soon as defendant opened the door, he punched defendant in the face, which caused defendant to bleed. After striking defendant, Detective Nieves and another detective struggled with defendant for about 30 seconds, until they handcuffed him.

The police did not find a loaded firearm or other contraband on the person of the defendant, or in his room, or anywhere else in the brothel.

At approximately 4:30 A.M., the police transported defendant in handcuffs, along with Ms. Christina Gonzalez, Ms. Frances Armonte, Ms. Jackie Ayuso and Mr. Jose Jiminian, from the brothel to the 34th Police Precinct for interrogation. Ms. Gonzalez was the owner of the brothel, and Ms. Ayuso worked there as a prostitute.

In the precinct, defendant was placed alone in a room, while the police questioned Ms. Armonte, Ms. Ayuso and Mr. Jiminian. From those witnesses, the police learned that, while Ms. Ayuso used to be the victim's girlfriend, she now had a relationship with the defendant, and Ms. Armonte stated Ms. Ayuso had told her that defendant had killed the victim. Following the obtaining of that information, police confronted defendant with the allegations against him.

After being advised of his *Miranda* rights in Spanish, defendant agreed to speak to the police. Subsequently, during the interrogation, defendant confessed, in both oral and written statements, that he had shot the victim in the head. Later, defendant accompanied the police to the scene of the crime, and reenacted the details of the murder. Finally, defendant described the killing to an Assistant District Attorney (ADA) in a videotaped statement.

By indictment, filed August 9, 1984, a Grand Jury charged defendant with the crime of murder in the second degree. Following arraignment, defendant's retained trial counsel moved for a pretrial *Huntley* hearing to suppress the incriminating statements defendant had made to law enforcement authorities, upon the principal grounds of police brutality, and the allegedly unlawful denial of the assistance of counsel to defendant, while he was being interrogated. At that hearing, the People, as well as the defense, presented evidence, and the court denied that motion.

Before the commencement of trial, trial counsel submitted a *Sandoval* motion, which the court granted in part, permitting the People to question defendant about one prior conviction, and not permitting any questions about a pending case.

During the trial, defendant testified in his own behalf. Thereafter, a jury found him guilty of murder in the second degree, and he was sentenced to an indeterminate term of imprisonment of from 25 years to life. Defendant appealed.

Subsequently, defendant moved to vacate the verdict, pursuant to CPL 440.10, on the ground that trial counsel had provided him with ineffective assistance of counsel, since he had never raised the issue of whether the police had probable cause to take defendant into custody at the brothel. Without holding a hearing, the trial court denied defendant's motion, and by order dated November 25, 1986, we granted defendant leave to appeal.

Thereafter, while we held the appeal from the conviction in abeyance, we remanded the matter for a hearing on defendant's CPL 440.10 motion. In our memorandum *(People v Garcia*, 137 AD2d 402, 406 [1st Dept 1988]), we stated, in pertinent part: "we find that Trial Term erred in denying defendant's motion, without a hearing, since it is not clear from the record whether defense counsel's failure to raise the issue of the legality of defendant's arrest was due to ineffectiveness of counsel or trial strategy *(People v Brown*, 45 NY2d 852, 854 [1978])".

On the remand, the trial court held a hearing. At that hearing the People called the only witness, who was trial counsel, and he was thoroughly cross-examined by defendant's new counsel.

Our examination of the transcript of this hearing indicates trial counsel testified, in substance, as follows:

Trial counsel stated he graduated in 1978 from law school, was admitted to practice in New York in 1979, and was subsequently admitted to practice in the Federal courts for the Southern and Eastern Districts of New York. Thereafter, he testified his first professional employment was as an Assistant Corporation Counsel of the City of New York, where he spent slightly over three years, assigned to the Tort Division, when he left that office, he went into private practice, as a sole practitioner, his practice consisted of 90% criminal cases, he averaged three trials a month, and, as of the date of the remand hearing in April 1988, he had tried at least 100 cases before a jury.

Furthermore, trial counsel testified that, prior to the instant matter, he represented defendant in a drug case, in which there was a pending warrant, and therefore, when defendant was questioned about the murder, he was still representing defendant in the drug case. Moreover, trial counsel testified that he represented defendant concerning the subject case at all proceedings after arraignment through trial, he consulted with the defendant in Spanish, which was the defendant's and his native language, since "We are both Dominicans", as soon as he saw defendant, the defendant informed him that he had made incriminating statements about the murder, as a result of police beatings, and there was evidence of those beatings, since one of his front teeth had fallen out, there was dried blood on his shorts, and he received medical treatment from the Department of Correction.

Trial counsel testified that he did not argue to suppress defendant's statements, as fruits of an arrest, without probable cause, since, after questioning defendant, Ms. Ayuso, who, as mentioned *supra,* was the defendant's girlfriend, and the ADA assigned to the case, he concluded the police had probable cause to take defendant into custody, in view of the fact a witness had overheard defendant tell Ms. Ayuso that he had killed the victim, who had shown him a lack of respect. Trial counsel assumed the witness, who overheard that conversation and told the police about it, was the same informant, who had

told the police about the gun, which was the basis for the search warrant. The basis of this belief was information he had received from Ms. Ayuso, who had told trial counsel that the witness's boyfriend, who had been arrested by the police, was released, after defendant's arrest, and thereafter, both that witness and her boyfriend disappeared. In addition, he believed that a suppression motion, based upon an allegation that the brothel was defendant's home, was not viable, since trial counsel knew, from his representation of defendant, that defendant's home was not in the brothel, in view of the fact defendant only stayed there three nights a week, whenever he worked late, and actually he had an apartment, located on West 139th Street, where he lived with Ms. Ayuso, and defendant kept all of his belongings in his father's "apartment in Queens".

After reading a legal memorandum, by his legal assistant, which was prepared at trial counsel's direction, about the relevance to the instant case of *Payton v New York* (445 US 573 [1980]), trial counsel testified he decided not to pursue an argument, based upon that case, in view of the fact that the brothel was not defendant's home. Furthermore, trial counsel stated he did a great deal of legal research, concerning the issues in this case, and he had examined, among other cases, *Dunaway v New York* (442 US 200 [1979]), and *Brown v Illinois* (422 US 590 [1975]).

Trial counsel testified that he subpoenaed defendant's medical records from the Department of Correction, but, that Department did not produce them. However, he did obtain mug shots of the defendant, which were taken after the arrest, and he viewed the videotape of the confession.

Significantly, trial counsel testified that defendant and he decided, in substance, that "the best thing * * * we had going for us was the fact that he was beaten up".

At the *Huntley* hearing, he testified that he moved to suppress the statements, upon the basis that defendant was beaten, and defendant was denied counsel, although the police should have known that defendant was represented on a pending case by trial counsel. However, the deprivation of counsel argument failed, when defendant admitted, at the *Huntley* hearing, he told the police that case had been dismissed. Even though the defendant testified, at that hearing, he had been beaten, the hearing court denied that motion.

During the trial, trial counsel testified he unsuccessfully

moved to reopen the *Huntley* hearing, upon the ground that Detective Nieves' trial testimony, that he punched defendant without cause, proved defendant's statements were involuntary.

Finally, trial counsel testified that, at trial, defendant testified he was beaten, and he argued on summation that defendant had lost a tooth, as a result of the police beating, and the videotape of the confession allegedly clearly indicated defendant's shorts were bloody.

The defendant did not rebut trial counsel's testimony, by any testimony, either from the defendant, or anyone else.

The remand court, who had also presided at the *Huntley* hearing, *Sandoval* hearing, and the trial, after the remand hearing, denied defendant's CPL 440.10 motion. In pertinent part, that court stated, in its decision, dated October 20, 1988 (at 7), "[t]rial counsel's conduct and efforts on defendant's behalf cannot be said to have been less than reasonably competent or to have made a farce and mockery of the trial". Great weight is to be given to the findings of the remand court, since "[c]redibility is determined by the trier of facts who has the advantage of observing the witnesses and necessarily is in a superior position with respect to that aspect than an appellate court which reviews but the printed record" *(People v Wright,* 71 AD2d 585, 586 [1st Dept 1979]; *People v Velazquez,* 104 AD2d 761, 762 [1st Dept 1984], *affd* 64 NY2d 1118 [1985]).

We stated in *People v Gonzalez* (80 AD2d 543, 544 [1st Dept 1981], *lv denied* 53 NY2d 842 [1981]), that "Defendant is entitled to a fair trial, not a perfect one."

Both the Constitutions of the United States and of this State, guarantee the right to the effective assistance of counsel (US Const 6th Amend; NY Const, art I, § 6).

Recently, in a Per Curiam opinion, the Court of Appeals held in *People v Rivera* (71 NY2d 705, 708-709 [1988]) that: "[W]hat constitutes effective assistance [of counsel] is not and cannot be fixed with precision, but varies according to the particular circumstances of each case * * *. A convicted defendant, with the benefit of hindsight, often can point out where he or she thinks trial counsel went awry. 'But trial tactics which terminate unsuccessfully do not automatically indicate ineffectiveness. So long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney

provided meaningful representation, the constitutional requirement will have been met' *(People v Baldi,* 54 NY2d 137, 146-147). A contention of ineffective assistance of trial counsel requires proof of less than meaningful representation, rather than simple disagreement with strategies and tactics *(People v Benn,* 68 NY2d 941)."

In other words, the Court of Appeals, *inter alia,* in *People v Rivera (supra)* makes crystal clear that a defendant, who is unhappy with trial counsel's performance, when that defendant is convicted, cannot because of that fact alone, claim that he or she received "less than meaningful representation" on the part of such counsel.

A unanimous Court of Appeals in *People v Satterfield* (66 NY2d 796, 798 [1985]) decided "[i]n reviewing claims of ineffective assistance care must be taken to 'avoid both confusing true ineffectiveness [of counsel] with mere losing tactics and according undue significance to retrospective analysis.' *(People v Baldi,* 54 NY2d 137, 146.)"

The United States Supreme Court in *Kimmelman v Morrison* (477 US 365, 374 [1986]) noted "[t]he essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect". Furthermore, that court has held, in order for a criminal defendant to prevail on a claim of ineffective assistance of counsel, he or she must establish that the counsel's conduct was not reasonably competent and resulted in prejudice to the defendant *(Strickland v Washington,* 466 US 668, 694 [1984]). The Supreme Court's reasonableness standard is an objective one *(Kimmelman v Morrison, supra,* at 375). In pertinent part, that court stated in *Strickland v Washington (supra,* at 689-690) that:

"Even the best criminal defense attorneys would not defend a particular client in the same way. * * *

"The availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges. Criminal trials resolved unfavorably to the defendant would increasingly come to be followed by a second trial, this one of counsel's unsuccessful defense. Counsel's performance and even willingness to serve could be adversely affected. Intensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the indepen-

dence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client".

Our analysis of the legal authority, *supra,* leads us to conclude that its plain meaning is that there is no inflexible standard, by which a court judges the effectiveness of counsel, since "[w]hat constitutes effective assistance cannot be fixed with precision" *(People v Natal,* 102 AD2d 496, 501 [1st Dept 1984], *affd* 66 NY2d 802 [1985]).

As discussed *supra* in the case before us, the counsel, whose performance is under attack, was retained counsel, who was well experienced in the criminal law, and consulted with the defendant in his native language of Spanish, and the defendant agreed with the strategy to be employed in defending this case, which was to primarily contend that the incriminating statements were beaten out of defendant by the police. Even the dissent concedes that trial counsel vigorously asserted this coercion claim *(see,* dissent, at 254).

Based upon the facts before us, discussed *supra,* we find that, since trial counsel knew, as a matter of fact, that the brothel was not defendant's home, an argument that *Payton v New York* (445 US 573 [1980], *supra)* applied to suppress the statements, upon the ground that the defendant's home had been unlawfully invaded, may very well have been professional misconduct. Code of Professional Responsibility DR 7-102 ("Representing a Client Within the Bounds of the Law"), subdivision (A) (5), states "In his representation of a client, a lawyer shall not * * * [k]nowingly make a false statement of law or facts". We held in *Matter of Padilla* (109 AD2d 247, 248 [1985]) that a lawyer, who violates DR 7-102 (A) (5), is guilty of misconduct.

Over the past several years, we note that more and more convicted defendants have been attacking the competency of their trial counsel, simply because they have been found guilty. We have not hesitated to reverse a conviction, when we find trial counsel to have been ineffective *(see, People v Hale,* 142 AD2d 172 [1st Dept 1988]). However, we will not adopt a standard of effectiveness of counsel, which means that trial tactics, which terminate unsuccessfully, constitute ineffectiveness, since that is not the law in this State *(People v Rivera, supra,* 71 NY2d, at 708-709).

Since counsel correctly decided that probable cause existed for the arrest of his client, it was reasonable for counsel not to

challenge the legality of the arrest, but rather to concentrate on the theory that his client's confessions resulted from the alleged police beating. This appears to be a valid and reasonable trial strategy. The fact that the jury did not accept same, is not an indication of ineffective representation.

When we apply the legal authority, *supra,* to the facts of the subject case, we find that trial counsel provided meaningful representation to defendant, in accordance with the definitions of meaningful representation contained in *People v Rivera (supra)* and *Strickland v Washington (supra).*

Accordingly, judgment, Supreme Court, New York County (Clifford A. Scott, J., at pretrial *Huntley* hearing, *Sandoval* hearing, trial, and sentence), entered March 11, 1985, which, after a jury trial, convicted defendant of the crime of murder in the second degree (Penal Law § 125.25), and sentenced him to an indeterminate term of imprisonment of from 25 years to life, is affirmed.

Order of the same court and Justice, entered on or about October 20, 1988, which denied, after a hearing, defendant's motion, pursuant to CPL 440.10, to vacate the judgment, is affirmed.

SMITH, J. (dissenting). I believe that counsel was ineffective in his failure to move to suppress defendant's statements, made after an illegal arrest. *(Brown v Illinois,* 442 US 590 [1975]; *Dunaway v New York,* 442 US 200 [1979]; *Payton v New York,* 445 US 573 [1980].) I would, therefore, continue to hold in abeyance the March 11, 1985 judgment of conviction for murder, and remand for a suppression hearing to determine whether there was probable cause for the defendant's arrest and whether his statements should be suppressed.

The defendant was convicted for the July 18, 1984 shooting death of Wilson Cabrera. Based upon conversations with a prostitute that on July 21, 1984 she had seen the defendant in possession of a loaded firearm at the brothel where he worked and lived, the police obtained a warrant for the search of the defendant and of his basement apartment. Although no weapon or contraband was found, the defendant was arrested. While in custody he confessed to the murder. Following his conviction he moved pursuant to CPL 440.10 to vacate the conviction on the ground that he had been denied the effective assistance of counsel in that his counsel failed to raise issues concerning the legality of his arrest. We reversed the trial court's denial of the motion without a hearing and granted

the motion to the extent of remanding the matter for an evidentiary hearing. In doing so this court stated, "it is not clear from the record whether defense counsel's failure to raise the issue of the legality of defendant's arrest was due to ineffectiveness of counsel or trial strategy *(People v Brown,* 45 NY2d 852, 854 [1978])." *(People v Garcia,* 137 AD2d 402, 406 [1988].)

The defendant's trial counsel was the sole witness at an April 29, 1988 hearing held upon remand from this court. This testimony does not support the conclusion reached by the motion court that counsel's failure to challenge the legality of the defendant's arrest was due to trial strategy.

The standard to be applied in determining whether a defendant has been denied the right to effective assistance of counsel (US Const 6th Amend; NY Const, art I, § 6) was articulated by the United States Supreme Court in *Strickland v Washington* (466 US 668 [1984]) and by the New York Court of Appeals in *People v Baldi* (54 NY2d 137 [1981]). These decisions concluded that a defendant's Federal and State rights to effective representation have been met when (1) the evidence, the law and the circumstances of a particular case, viewed in totality, reveal that defense counsel "provided meaningful representation" *(People v Baldi, supra,* at 147), and (2) the claimed errors of counsel did not prejudice the defendant, that is, that no reasonable probability exists that the outcome of the proceedings was affected by counsel's errors. *(Strickland v Washington, supra,* at 694; *see also, People v Ferguson,* 114 AD2d 226, 229-230 [1st Dept 1986].) Moreover, when, as here, the defendant's claim of ineffective assistance of trial counsel is based predominantly on counsel's failure to seek a pretrial hearing, the defendant must demonstrate the absence of strategic or other legitimate explanation for counsel's failure to pursue that "colorable" claim. *(People v Rivera,* 71 NY2d 705, 709 [1988]; *People v Brown, supra,* at 854.)

Clearly, under the facts herein, where the defendant's indictment and conviction rest primarily upon statements by him, there is a "reasonable probability" that but for counsel's failure to move to suppress those statements upon the basis of the illegality of the arrest, the results of the proceedings would have been different. *(Strickland v Washington, supra,* 466 US, at 694; *People v Garcia, supra,* 137 AD2d, at 405.)

While the remand court attributed trial counsel's failure to

challenge defendant's arrest to a "tactical consideration", there has been no adequate explanation as to what the defense tactic or strategy was. Nor was any other reasonable explanation offered why counsel, based on the facts as he then knew them, failed to assert the claim of illegal arrest, a claim which was thoroughly consistent with the claim of "police brutality" which he vigorously pursued.

Trial counsel testified at the April 29, 1988 hearing that he did not seek to suppress the defendant's statements as fruits of an arrest without probable cause based upon his conversations with the defendant, with the defendant's girlfriend and with the Assistant District Attorney assigned to the case. These conversations led him to conclude that there had been probable cause for the arrest. According to trial counsel, he believed that a prostitute had overheard the defendant bragging about having committed the homicide and had provided this information to the police. Counsel assumed that this prostitute was the same one who provided the police with information as to the gun, which information was the basis for the search warrant. This prostitute could not be located for Garcia's trial.

Such a conclusion, based upon speculation as to what a prostitute may have told police, cannot be considered to be reasonable in light of the applicable law. *(Brown v Illinois,* 422 US 590 [1975], *supra; Dunaway v New York,* 442 US 200 [1979], *supra; People v Johnson,* 66 NY2d 398 [1985].)* In all three of the above-cited cases, statements made after illegal arrests were suppressed.

In *Brown v Illinois (supra),* the defendant had been arrested without probable cause and made incriminating statements concerning a murder. The Supreme Court held that the giving of *Miranda* warnings did not automatically purge the taint of the illegal arrest by breaking the chain between the illegal arrest and the statements. The court ruled that in considering the connection between the arrest and the statements, the factors which should be considered included the time between the arrest and the confession, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct. (422 US, at 603-604.)

In *Dunaway v New York (supra),* the defendant had been arrested without probable cause and subsequently made incriminating statements concerning an attempted robbery and murder. The Supreme Court reversed the conviction and

suppressed the statements, holding that there was a causal connection between the arrest and the statement. The court also reiterated the conclusion reached in *Brown v Illinois (supra)* that the giving of *Miranda* warnings did not automatically purge the taint of an illegal arrest.

In *People v Johnson (supra),* the Court of Appeals ruled that the reliability of an informant whose information formed the basis for defendant's arrest for murder had not been established. Therefore defendant's arrest was not based on probable cause and was held unlawful, with his statements confessing to murder suppressed and a new trial ordered.

Here, when faced with a detention based upon a search warrant pursuant to which no fruits were recovered, defense counsel should have immediately perceived a "probable cause" issue.

Counsel's outright rejection of any argument pursuant to *Payton v New York* (445 US 573 [1980], *supra)* was similarly unreasonable. There, the Supreme Court ruled that warrantless arrests in a person's home violated the Fourth Amendment of the US Constitution absent special circumstances. Counsel testified that he had information that even though the defendant also may have lived at two other addresses, he had a room at the brothel, had a key, showered at the brothel and stayed there three nights per week. Based upon these facts alone a valid argument could have been made that the defendant had standing to challenge his arrest in the bordello without an arrest warrant. *(Payton v New York, supra; People v Lewis,* 94 AD2d 44, 51 [1st Dept 1983] [physical evidence seized from the apartment of defendant's cousin, which implicated defendant in a robbery, was ordered suppressed. Defendant was held to have a privacy interest in the apartment and had standing to contest the seizure of the items].)

At trial the defendant stated that he lived in a basement apartment at the brothel. His employer, the owner of the brothel, testified that the defendant was given a room to stay in and that on the day of his arrest the police let themselves in, rushed past her room and headed to the basement apartment where the defendant was staying. Even after this testimony counsel did not argue that the arrest was illegal and again did not challenge the arrest when during trial he unsuccessfully moved to reopen the *Huntley* hearing.

At the April 29th hearing, trial counsel stated that in preparation for trial he had either reviewed legal memoranda

prepared by his legal assistant or read the decisions in *Payton v New York (supra); Dunaway v New York (supra)* and *Brown v Illinois* (422 US 590 [1975], *supra)*, but at the hearing he could not recall the facts of these cases. Although given an opportunity to produce his case file in connection with the April 29 hearing, counsel never did so.

Even with respect to the defense claim that the confessions were physically coerced, trial counsel, who represented defendant during the six months prior to the pretrial hearing and trial, failed to view the defendant's videotaped confession prior to the *Huntley* hearing or to diligently pursue efforts to obtain the defendant's medical records.

Recently, in *People v Vauss* (149 AD2d 924) the defendant's conviction of criminal possession of stolen property, second degree, was unanimously reversed and a new trial ordered as a result of trial counsel's failure to challenge the admissibility of statements made by the defendant to police in what appeared to be a violation of *Payton v New York (supra)*. The Fourth Department held that the warrantless arrest of the defendant by police who broke into his motel room, and the critical nature of the evidence flowing from that arrest required that the statement be challenged, stating, "Defense counsel's failure to address the *Payton* issue was a fatal deficiency rendering counsel's representation ineffective and not meaningful" (at 924).

In the instant case, while counsel vigorously pursued the coercion and Sixth Amendment claims, principles of fundamental fairness and justice require that the People be put to their proof on those basic issues concerning the legality of the defendant's arrest and consequent admissibility of his confessions. The People should have been held to the burden of establishing the reliability of the informant whose information provided the basis for the search warrant, and of establishing the grounds upon which the defendant was handcuffed in what may have been his home, without a warrant, beaten without provocation, arrested and taken to the police precinct and detained until he confessed.

MURPHY, P. J., SULLIVAN and ROSENBERGER, JJ., concur with Ross, J.; SMITH, J., dissents in a separate opinion.

Judgment, Supreme Court, New York County, rendered on March 11, 1985, and an order of said court entered on October 20, 1988, affirmed.