(July 28, 1994)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VICKI-CRYSTAL A. WRIGHT, Appellant. [614 NYS2d 818] —Mikoll, J. P. Appeals (1) from a judgment of the Supreme Court (Cheeseman, J.), rendered September 4, 1991 in Albany County, upon a verdict convicting defendant of the crime of assault in the second degree, and (2) by permission, from an order of the County Court of Albany County (Breslin, J.), entered April 9, 1993, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.

Defendant met Fred Washington at the Bottom's Up Bar in the City of Albany on the night of February 21, 1990. The Bottom's Up was located across the street from defendant's apartment. Defendant reportedly had three beers and two shots of blackberry brandy after leaving work that day at another bar. She arrived home at 7:00 P.M. and then went out again about 10:30 P.M., this time to the Bottom's Up. Shortly after she arrived at the Bottom's Up, she became involved in a conversation with Washington, who had taken a seat on a bar stool near her. She had only been in the Bottom's Up on one prior occasion and she did not know Washington. After about 2½ to 3 hours of talking and drinking, they left the bar and went to defendant's apartment across the street.

It is at this point that their stories diverge. Defendant testified that, just before the two left the Bottom's Up, she was unable to find her jacket which she had hung over her bar stool. Defendant said that Washington told her that his friend might have taken it, but that he did not want to call from the noisy bar. They therefore went to her apartment solely to permit Washington to make a telephone call to his friend about defendant's jacket. She denied any physical contact between the two in the bar. Defendant testified that at her apartment, she showed Washington the telephone and then

went to her bedroom to hide her purse. Washington next appeared naked in the doorway to her bedroom. Fearing that he would rape her, she grabbed a knife she had on her dresser and, as Washington kept coming toward her, she struck at him with the knife cutting him in the penis. Defendant yelled for help, they struggled and Washington went out of the bedroom only to yell at her and throw objects at her bedroom door, which she held closed. Defendant testified that Washington eventually left the apartment and she called the police who came and investigated.

Washington's version of the events was that defendant had grabbed him and kissed him during the evening and they left together holding hands. He did not remember anything about a telephone call to locate defendant's jacket. Washington testified that upon arrival at her apartment, defendant brought him to the bedroom, told him to make himself comfortable and went somewhere. Washington then undressed and sat on the bed. Defendant then returned carrying something in her right hand. She began making slashing motions at him. He stood up and defendant continued after him. Washington grabbed his clothes and ran out of the bedroom, got dressed, banged on the bedroom door, screamed at defendant and threw a flower pot at the door. He eventually left with a radio and flagged a passing motorist. Although Washington had realized he had been cut in the stomach, it was not until the motorist, Peter Carr, called his attention to blood coming through his pants that he knew his penis had been cut. Although Washington wanted to be taken to his mother's house, Carr insisted on taking him to the hospital.

Police officers were dispatched to defendant's apartment at about 2:00 A.M. on February 22, 1990. Defendant told Officer Douglas Walczak that someone had tried to rape her so she cut him in the penis with a knife. Walczak observed defendant with the knife in her hand when he entered her apartment and also observed a hunting knife on her dresser. Detective Sean Keane saw defendant at the police station and Washington at the hospital. Keane testified that both defendant and Washington were intoxicated. Keane also testified that, prior to defendant's call to the police station, her downstairs neighbor had called the police to report a disturbance on the second floor. Keane prepared a report at 7:45 A.M. on February 22, 1990. Thereafter, on March 7, 1990 defendant was placed under arrest. Keane obtained statements from defendant and Washington a week after the incident.

On May 22, 1990, defendant was indicted and charged with

three counts of assault in the first degree. At the trial defendant claimed that she acted in self-defense; the jury ultimately convicted her of one count of assault in the second degree. Defendant was sentenced to five years' probation. Defendant's subsequent motion pursuant to CPL 440.10 to vacate the judgment of conviction on the ground of newly discovered evidence was denied. Defendant now appeals from the judgment of conviction and, by permission, from the denial of her CPL 440.10 motion.

Defendant's contention that the judgment must be reversed because the verdict of guilty was against the weight of the evidence is without merit. Viewing the evidence in a light most favorable to the People (see, People v Contes, 60 NY2d 620, 621), we find that there was sufficient evidence to support the jury verdict and it was not against the weight of the evidence (see, People v Duffy, 185 AD2d 528, 528-529, lv denied 80 NY2d 903). Questions of credibility were for the jury to resolve (see, People v Stumbrice, 194 AD2d 931, 934, lv denied 82 NY2d 727). It was the jury's prerogative to credit the version of the incident advanced by Washington and supported by his expert, Jack Davies, and reject that of defendant and her expert, Thomas Oram. There were no witnesses to the actual incident except the two participants. The fact that Washington's testimony was inconsistent and contradictory in some respects does not render his entire testimony unworthy of belief. The jury could accept some portions and reject other parts of his testimony and this Court must be careful not to substitute its judgment for that of the fact-finder. An intermediate appellate court should defer to the fact-finder's superior position to view the various witnesses, observe their demeanor and weigh their respective testimony (see, People v Garcia, 149 AD2d 241, 247, affd 75 NY2d 973).

We also find unpersuasive defendant's argument that the prosecution's failure to turn over a statement by Carr, who could not be located for the trial, constituted a violation of defendant's right to exculpatory material in the prosecution's possession prior to trial. Defendant contends that Carr's statement contradicted certain statements made by Washington and therefore its production was crucial to her defense. The theory of defendant's case was self-defense. As Carr was not present at the time the incident occurred, his testimony could therefore only be used to impeach Washington's testimony, that is, to attack his credibility. Although the statement was not turned over until the day before jury selection, defendant could and did use it to impeach Washington's testimony (see,

*People v Cortijo,* 70 NY2d 868, 870; *People v Duffy,* 185 AD2d 528, 539, *supra; People v Steele,* 168 AD2d 937, *lv denied* 77 NY2d 967; *People v Fernandez,* 135 AD2d 867, 869, *lv denied* 71 NY2d 895). We therefore find no *Brady v Maryland* (373 US 83) violation here. The argument that defendant may have been able to locate Carr if the statement had been turned over earlier is of no help to defendant, because it does not appear that Carr's testimony would have been material to the defense or that it would have changed the strategy of the defense *(see, People v Estela,* 177 AD2d 646, *lv denied* 79 NY2d 856). Moreover, defendant was given wide latitude in using the statement during trial. Defense counsel was able to read the statement to the jury and to compare the differences between it and Washington's testimony.

Defendant's assertion that she was denied effective assistance of counsel is also rejected. "Success on a claim of ineffective assistance of counsel 'requires proof of less than meaningful representation, rather than simple disagreement with strategies and tactics' " *(People v Garcia,* 187 AD2d 868, 868-869, *lv denied* 81 NY2d 885, quoting *People v Rivera,* 71 NY2d 705, 708-709). The record demonstrates that defense counsel was vigorous in his efforts to establish defendant's claim of self-defense, in processing motions on defendant's behalf and in attempting to destroy Washington's credibility. Defense counsel's representation, viewed in its totality, satisfied the requirements set forth in *People v Baldi* (54 NY2d 137).

Also without merit is defendant's contention that this Court should reverse her conviction in the interest of justice so that chemical testing can be performed on items of Washington's clothing (CPL 470.15 [6] [a]). The failure to have certain items of Washington's clothes chemically tested for the presence of spices, in order that the results may refute Washington's testimony that he undressed inside the bedroom and tend to corroborate her testimony to the contrary, does not rise to such an egregious error as to deprive defendant of a fair trial and does not present an appropriate situation for the exercise of this Court's discretion in the interest of justice *(see, People v King,* 105 AD2d 1015, 1016).

There was also no error in County Court's denial of defendant's CPL article 440 motion to vacate the judgment of conviction on the ground of newly discovered evidence (CPL 440.10 [1] [g]) based on a newspaper report of an incident involving Washington that occurred on February 4, 1993 and the postjudgment discovery that Washington had been an

informant for police in the Albany area. Defendant's motion papers were dated February 5, 1993, the day after the reported incident. There is no indication in the motion papers regarding when defendant discovered the fact that Washington was an informant, but only that this information was related in a conversation with the Assistant District Attorney who tried the case and through conversations with defendant's attorney on this appeal after she was assigned the appeal.

Initially, the discovery of the newspaper article of February 5, 1993 could not in any way constitute newly discovered evidence that would have affected the outcome of the trial since it was not only unrelated but did not exist at the time of trial. Regarding the information that Washington had acted as a police informant, this only goes to his credibility and is not sufficient to warrant a vacatur of the judgment. There is no showing in defendant's motion papers that there is a probability that the jury's knowledge of the fact that Washington had been a police informant would change the result upon a new trial, an essential element before a new trial will be granted (see, People v Salemi, 309 NY 208, 216, cert denied 350 US 950; People v Boyette, 201 AD2d 490; People v Gurley, 197 AD2d 534, 535; People v Howard, 127 AD2d 109, 118, lv denied 70 NY2d 648). There has been no demonstration that this evidence establishes misconduct by the prosecution or that it does more than impeach Washington's credibility (see, People v Jackson, 78 NY2d 638, 645; People v Howard, supra, at 119; People v Powell, 96 AD2d 610). Moreover, it is possible that a juror might draw an inference from the fact that Washington was used as an informant that he had some credibility with the police despite his criminal record. Additionally, this aspect of the CPL 440.10 motion to vacate cannot be said to have been made with due diligence (CPL 440.10 [1] [g]). It was known at the trial that Washington received immunity from prosecution when he testified before the Grand Jury before the indictment was returned. The delay was significant and unexplained.

We have considered defendant's other arguments for reversal and find them without merit.

Mercure, Crew III, Yesawich Jr. and Peters, JJ., concur. Ordered that the judgment and order are affirmed.