Wachtler, J.
Defendant, charged with possession and sale of dangerous drugs, was represented by assigned counsel at trial. He was found guilty of all charges and on the appeal claims that he was deprived of his constitutional right to the effective assistance of counsel because of counsel’s lack of preparation for trial and ignorance of basic principles of criminal law. This complaint, frequently made, is rarely found to have merit. On this record, however, we find that the defendant’s position should be sustained.
Defendant allegedly sold drugs to an undercover police officer, Detective McGuckin, on January 27, 1972 and January 31, 1972. On each occasion the officer was accompanied by an unidentified informer who apparently witnessed the sales at the defendant’s apartment. Following the second sale, Mc-Guckin, together with several other police officers, returned to the apartment and executed a search warrant. They seized 17 tinfoils of heroin, 3 hypodermic needles, a syringe, and 2 eyedroppers. Six persons, including the defendant, were found in the apartment and all were arrested. The Grand Jury returned a nine-count indictment charging the defendant with possession and sale of narcotics and related offenses. The first six counts related to the sales and the last three counts concerned the contraband seized pursuant to the search warrant.[1]
Defendant and a codefendant, Angel Colon, were originally represented by the Legal Aid Society. But on July 5, 1972, apparently to avoid a conflict of interest, defendant was assigned different counsel by the court. The assigned attorney did not consult with the defendant until September 5, 1972 when the case was called for trial. On that occasion he requested an adjournment noting that he had just been ad *460 vised, by his client that the defendant had seven witnesses and that at least a week would be needed to examine the Legal Aid file, to employ an investigator and to examine the witnesses. The motion was denied but this first trial resulted in a mistrial because of an emergency in defense counsel’s family.
When the second trial began two weeks later, defense counsel requested an adjournment because he had not yet made contact with any witnesses. Apparently he had sent letters to two of the prospective witnesses—defendant’s sister and niece—but neither had responded. When the motion was denied, defense counsel renewed the application stating that the testimony of the witnesses was of "vital importance” to the defendant’s interest. But when this proved fruitless, he advised the court that he had previously discussed the matter with the defendant who "consented to go forward without the witnesses.” However, when the court asked the defendant if he consented, the defendant stated "I don’t believe so, your Honor, because I need my witnesses here to prove my innocence. Without them, I can’t go to trial.” Nevertheless the court adhered to its earlier decision and the case proceeded to trial.
During voir dire defense counsel made it quite clear to the jury that the defendant had an extensive criminal record and in his opening statement advised the jury that the defendant would take the stand in his own behalf to refute the testimony of the People’s witnesses.
On the third day of trial, after the People had submitted proof not only as to the sales, but also as to the contraband seized at the defendant’s apartment, defense counsel discovered that the defendant had already pleaded guilty to the charges stemming from the items seized pursuant to the warrant. At this point the court dismissed the last three counts of the indictment and offered the defendant a mistrial on the six remaining counts provided the defendant himself joined in the motion.
Defense counsel advised the court that he had informed the defendant that a motion for a mistrial would have "no merit”, although "there is an area of doubt in my mind as to the jury’s being able to completely” disregard the testimony relating to the items found in the defendant’s apartment. He further noted that the defendant had been unable to make a decision based on the advice he had received and expressed a *461 lack of confidence in counsel’s judgment. In view of this, the attorney requested leave to withdraw from the case.
The court denied this request and advised the defendant that it was for him alone to decide whether he wanted a mistrial. However the defendant stated that he did not "even understand now what is going on here.” After the court explained the "options” the defendant was still unable to decide. The jury was recalled, advised that the last three counts had been dismissed, that all testimony relating to them should be disregarded, and the trial was resumed.
With the last three counts out of the case, Detective Mc-Guckin became the primary witness for the prosecution since he was the only eyewitness to the sales.[2] And although he had previously testified before the Grand Jury, defense counsel did not request a copy of his prior testimony (see People v Rosario, 9 NY2d 286). However in cross-examination defense counsel did elicit testimony to the effect that the defendant’s apartment was used as a "shooting gallery”, i.e., a place where drug addicts gathered to inject themselves with narcotics, and attempted to establish the fact that the defendant himself was an addict. Defense counsel then pointedly observed that Colon had pleaded guilty while "throughout this this entire proceeding Droz pleaded not guilty and that’s—do you know that?” Actually this was not correct since the defendant had pleaded guilty to the second count in satisfaction of the indictment but the plea had been withdrawn.
The court, considering counsel’s conduct "outrageous” and a "misrepresentation of the record” informed the jury "that this defendant previously pleaded guilty and then withdrew his plea of guilty. It is right there on the paper, large as life.” The court then declared a mistrial and summarily dismissed the jury because "I think the knowledge that he previously pleaded guilty to a felony in this case, and then withdrew that plea, so seriously taints all the proceedings here that however much you desire and endeavor to be fair and unprejudiced you cannot. You cannot render an unprejudiced verdict.” However, before the jury was withdrawn, defense counsel objected to the mistrial, and when the defendant himself joined in the objection the court proceeded with the trial.
Later it was noted on the record that the decision to *462 continue was based on defense counsel’s belief that since the defendant intended to take the stand, the fact that he had previously pleaded guilty to the indictment could be brought out on cross-examination despite the fact that the plea had been withdrawn. However when the People finally rested, the defendant also rested. He did not call any witnesses nor did he testify on his own behalf.[3] The jury found the defendant guilty on all six counts.
We have often noted that it is impossible to precisely define "inadequate” or "ineffective” legal representation or "to formulate standards which will apply to all cases” (People v Bennett, 29 NY2d 462, 466). However it is elementary that the right to effective representation includes the right to assistance by an attorney who has taken the time to review and prepare both the law and the facts relevant to the defense (People v Bennett, supra) and who is familiar with, and able to employ at trial basic principles of criminal law and procedure (People v LaBree, 34 NY2d 257; cf. People v Jones, 25 NY2d 637). Whether counsel has adequately performed these functions is necessarily a question of degree, in which cumulative errors particularly on basic points essential to the defense, are often found to be determinative (see, e.g., People v Bennett, supra; People v LaBree, supra).
Here it is evident that counsel made little or no effort to prepare the case for trial. He did not consult with his client until two months after his appointment, and then only on the first day of the initial trial. In addition, apart from mailing two letters, he made no attempt to contact potential witnesses to determine whether they might have any evidence helpful to the defense. Apparently he did not even study the record. Thus he was not aware that the defendant had previously pleaded guilty to the charges alleged in the last three counts of the indictment, and consequently, very damaging testimony regarding the cache of drugs found in the defendant’s apartment was admitted at trial, when it properly should have been excluded. And if counsel was familiar with the fact that defendant had also pleaded guilty, and later withdrawn the plea to the remaining counts, it is difficult to understand why he was so instrumental in bringing this highly prejudicial matter to the attention of the jury.
*463 This particular error was later compounded when counsel advised the defendant that a mistrial would accomplish nothing since the information regarding the withdrawn plea would come out on cross-examination, in any event, once he took the stand. That, of course, is not correct since it is well settled that a guilty plea, once withdrawn, "is out of the case forever and for all purposes” (People v Spitaleri, 9 NY2d 168, 173). Finally we note that counsel made no effort to obtain the prior testimony of Detective McGuckin, although use of such testimony on cross-examination is now accepted as one of the fundamental methods for "impeaching the prosecutor’s witness” (People v Rosario, supra, at p 290; see, also, People v LaBree, supra, at p 259), particularly the primary witness for the prosecution.
In sum, considering all the omissions and errors of defense counsel, we cannot say that the representation defendant received in this case was adequate or effective in any meaningful sense of the words.
The order appealed from should be reversed and a new trial ordered.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Fuchsberg and Cooke concur.
Order reversed, etc.

. The first six counts charged the defendant with criminally selling a dangerous drug in the third degree (two counts) and criminal possession of a dangerous drug in the fourth degree (two counts) and sixth degree (two counts). The last three counts charged the defendant with criminal possession of a hypodermic instrument and criminal possession of a dangerous drug in the fourth and sixth degrees.

. The People did not call the confidential informant, and defense counsel did not move for disclosure of his identity.

. Apparently the defendant himself decided not to testify on the last day of the trial. It is not entirely clear from the record what prompted him to change his mind.