OPINION OF THE COURT
Nat H. Hentel, J.
FINDINGS OF FACT
Defendant pleaded guilty to criminal possession of a controlled substance in the third degree, a class B felony, under each of the two instant indictments. He had been indicted previously for murder in the second degree under Indictment No. 2371/1976, and convicted of manslaughter in the second degree, a class C felony, by virtue of a guilty plea.
At the time fixed for sentencing under the two instant indictments, defendant challenged the constitutionality of his one and only 1977 prior felony conviction for manslaughter in the second degree, under the purview of CPL 400.21, which prescribes that an evidentiary hearing shall be held by the court to determine the validity of such challenge. Under the statute, the District Attorney has the burden of establishing the constitutionality of a prior conviction by the same degree of evidence required to prove a criminal case.
*285 The basis for defendant’s challenge is twofold:
(1) That, as an individual of limited mentality and education, he lacked mental competence to understand the proceedings, and did not comprehend the nature of his prior plea of guilty in 1977; and
(2) That he was not represented by competent counsel during the processing of the murder indictment in violation of his United States constitutional Sixth Amendment rights.
It is to be noted that defendant had moved earlier for reargument and reconsideration of his 1977 guilty plea which had been referred back to Supreme Court Justice Kenneth Browne, who had taken the 1977 allocution, and who had found, after a review of the file and argument of counsel, that defendant had knowingly and intelligently pleaded to manslaughter in the second degree. A review of the transcript of that allocution amply supports the conclusion of Justice Browne.
At the evidentiary hearing under the instant indictments, a review was made of all of the records as well as of the allocution before this court which clearly led this court to its present determination that defendant possessed and had possessed sufficient intelligence and competence to understand the nature of the instant proceedings. Thus, his pleas of guilty under the instant two indictments were also knowingly, competently and intelligently made at a time when he was appropriately represented by competent counsel. Therefore, this court denies the relief requested on the basis of an alleged lack of competence on the part of defendant to understand the proceedings and the advice of his counsel.
However, on the remaining ground of lack of competent counsel anent the murder indictment, the court comes to an opposite conclusion.
During the hearing, the only evidence which the District Attorney presented in support of his burden to establish the constitutionality of the manslaughter conviction was the 1977 allocution as aforesaid, and Justice Browne’s written decision denying the motion for reargument, reconsideration, and to set aside the manslaughter convic *286 tion, and to direct a new trial. No witnesses were called by the People. However, defendant was called by defense counsel and testified on his own behalf.
At the conclusion of the hearing, the court rendered its decision from the Bench during which the court indicated it was impressed by the following circumstances established by court records and defendant’s testimony at the hearing:
(1) Defendant was convicted of manslaughter in the second degree, a C felony, in satisfaction of an indictment for murder in the second degree, a class A felony. The alleged homicide occurred on October 18, 1976. Defendant was sentenced by Justice Browne after such plea to five years’ probation. The probation report available to Justice Browne on the occasion of the 1977 sentence indicated that there were sufficient grounds to believe that defendant was acting in self-defense at the time he shot the victim. In fact, the probation report labeled the possibility of self-defense as “plausible” under the circumstances.
(2) During the allocution proceedings in 1977, the District Attorney made no objection to the proposed sentence of five years’ probation. In fact, the then District Attorney stated on the record that, at the time of the shooting defendant had just cashed his Supplemental Security Insurance check, and had purchased some liquor; and was then attacked by three males (including the victim) who robbed him of his remaining cash, and then they left. The District Attorney also stated for the record that the three robbers returned within a matter of minutes, displayed knives, and attempted to rob defendant of his food stamps, at which time, defendant, in fear of his life and safety, removed a pistol from his pocket and fired one shot. Thereafter, the three robbers fled and disappeared out of sight, and the victim was later found dead some blocks away from the scene of the shooting. These facts were attested to by the District Attorney following his investigation of this matter. The District Attorney also advised the court that the victim was a narcotics addict, and it was quite probable that he had robbed defendant for the purpose of obtaining money to feed his habit.
*287 (3) The proof at the hearing also established that defendant had possessed a pistol for 10 years prior to the homicide; and that he had purchased it after he had been mugged twice before; and that he only carried the pistol when he cashed his checks.
(4) There is nothing in the court records or probation reports under the three indictments involved which show that this homicide was a premeditated crime. There is, however, the probation report rendered to the court following a review of all the facts characterizing defendant’s shooting of the victim as an act of self-defense, which act had “some degree of plausibility”, but that it was extremely difficult for the Probation Department to analyze the offense.
(5) Apparently, there was no objection on the part of the District Attorney to the five-year probation sentence which was, in fact, recommended by the District Attorney. This was a negotiated plea by defendant’s counsel and the District Attorney. This is indicative of the inherent weakness in the District Attorney’s ability to prove either murder or manslaughter beyond a reasonable doubt because of an affirmative defense of justification. Parenthetically, the court notes that it is highly unusual for the District Attorney to reduce an A felony more than one degree as was done here where the reduction was to a C felony, or two degrees below; and also opt for probation in a homicide case unless there were extenuating circumstances or patent weaknesses in proof.
(6) During the arraignment process under the murder charge, and up to the time of indictment, defendant was represented by Legal Aid counsel, and not by defendant’s present 18-B counsel. The court has searched the records, and cannot find any indication that original counsel advanced the defense of justification either at the time of arraignment, nor did he demand that defendant be brought before the Grand Jury to testify as was his right under CPL 190.50. Had defendant done so, there is a distinct possibility that the Grand Jury might not have voted a true bill for murder or any other homicide. The records also show that the arraigning Justice only fixed bail in the low sum of $1,000, which also is an indication that the charge of *288 murder was even then being viewed as something less than “a sure thing”.
(7) The failure of prior counsel to advise defendant, or explain to, or urge upon him that he had a right to appear before the Grand Jury to testify with respect to self-defense in this case, under all of the circumstances, strongly suggests that such failure was tantamount to a denial of defendant’s United States constitutional Sixth Amendment right to be represented by competent counsel, thus, in effect, denying to him due process.
(8) It is significant that defendant was only indicted for murder in the second degree, and was not charged with any other offense or felony including criminal possession of a firearm. Thus, the possibility that there was an affirmative defense of justification should have occurred to any competent counsel under the circumstances. This is patently clear!
CONCLUSIONS OF LAW
The Sixth Amendment to the Constitution of the United States provides: “In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence.” (US Const, 6th Arndt; see, also, Gideon v Wainwright, 372 US 335.)
“What constitutes effective assistance is not and cannot be fixed with yardstick precision, but varies according to the unique circumstances of each representation”. (People v Baldi, 54 NY2d 137, 146; see People v Droz, 39 NY2d 457.)
The meaning of the right to effective assistance of counsel has enjoyed a multitude of interpretations. Such now familiar phrases as “farce and * * * mockery” (People v Brown, 7 NY2d 359, 361); “adequate or effective” (People v Droz, supra, at p 463), and “reasonable competence” (see, e.g., United States v Fessel, 531 F2d 1275, 1278; United States v Elksnis, 528 F2d 236, 238), referring of course to competence of counsel, are prevalent in our case law. These guidelines, subject to a plethora of subjective meanings by the Presiding Judge, provide the unsettled framework for assessing attorney competence at the trial state of adver *289 sarial proceedings. What most courts agree on, however, is the vagaries of such standards.
The right to counsel at the earliest and most crucial stages of criminal proceedings is an undoubted truth. The defendant’s fate is in a very real sense, fixed at the time of indictment.
The court aptly stated in People v Claudio (85 AD2d 245, 257): “[T]he Sixth Amendment right to counsel, as well as its parallel State constitutional right, is triggered with the advent of judicial proceedings [whether by way of formal charge, preliminary hearing, indictment, information or arraignment], because it is then that the assistance of counsel is deemed indispensable. Not only does a defendant find himself facing the prosecutorial power of the State, but he becomes ‘immersed in the intricacies of substantive and procedural criminal law’ (Kirby v Illinois, supra, p 689). His need for * * * legal assistance at that point is clear.” (See, also, People v Di Biasi, 7 NY2d 544; People v Meyer, 11 NY2d 162; People v Samuels, 49 NY2d 218.)
Defendant alleges that the failure of counsel to submit him to the Grand Jury in order for him to testify as to his obvious defense of justification denied him his Sixth Amendment rights, thus nullifying the 1977 felony conviction for purposes of heightened sentencing pursuant to section 70.06 of the Penal Law.
In the search for standards of attorney competence during the arraignment through indictment procedures, the court finds little, if any, precedent to guide it. Most recently, Justice Uviller in People v De Shields (115 Misc 2d 1038, 1042-1043), sought to define the question of competence at a pretrial proceeding in the following manner: “However unclear the standards may be for assessing counsel’s competence at trial, they are virtually nonexistent in the context of the plea negotiation process” (citing People v Claudio, 85 AD2d 245, supra), and held that the leniency of the sentence received is the best measure of a lawyer’s competence at the plea bargaining stage.
This court finds that where there is an articulable probability of success in advancing an affirmative defense at the time of the arraignment through indictment stage, which *290 could result in lessening the degree of the crime to be charged, or a determination by the Grand Jury not to indict at all, defense counsel should then immediately assert such defense in order to afford defendant due process and his constitutional rights under the Fourteenth and Sixth Amendments.
Counsel’s freedom to determine trial strategy should not be usurped by the court which is well aware that “Mind-sight should not escalate what may have been a few tactical errors into [a judgment oí] ineffective assistance of counsel”. (People v Baldi, 54 NY2d, at p 151, supra; People v Jackson, 52 NY2d 1027.) Counsel here should have submitted defendant to the Grand Jury, as was his statutory right under CPL 190.50, or, at the very least, argue the lack of logic of a murder charge before the arraigning Judge under the facts and circumstances that were discovered, or should have been discovered, as a result of both the prosecution’s and defense’s investigation.*
“Whether representation of counsel was effective cannot be determined in a vacuum. An act or omission on the part of counsel, which in one case might constitute error, need not constitute error in all cases.” (People v Aiken, 45 NY2d 394, 399.)
This court is convinced that the representation of defendant, prior to his pleading guilty to manslaughter in the second degree, was not “adequate or effective in any meaningful sense of the words.” (See People v Droz, 39 NY2d, at p 463, supra.)
This court is further compelled to examine the underlying purpose of the predicate felony statutes, and determine what purpose would be served by increasing the sentence as prescribed by section 70.06 of the Penal Law.
*291 In general, one of the expressed objectives of the Penal Law is “[t]o insure the public safety by preventing the commission of offenses through the deterrent influence of the sentences authorized, the rehabilitation of those convicted, and their confinement when required in the interests of public protection.” (Penal Law, § 1.05, subd 5.)
More particularly, People v Butler (46 AD2d 422, 425) citing Graham v West Virginia (224 US 616, 623-624), stated: “ ‘The propriety of inflicting severer punishment upon old offenders has long been recognized in this country and in England. They are not punished the second time for the earlier offense, but the repetition of criminal conduct aggravates their guilt and justifies heavier penalties when they are again convicted. * * * The punishment is for the new crime only but is the heavier if he is an habitual criminal.’ ”
In enacting section 70.06 of the Penal Law, “the Legislature could determine within acceptable constitutional dimensions that it wishes to be more severe with those who have consistently violated the laws of this State. An individual with a history of violating our laws may be viewed as a greater threat to the peace and tranquility of the residents of New York.” (People v Pacheco, 73 AD2d 370, 376.)
Having found, in this case, ample basis for a justification defense, this court cannot say that sentencing defendant as a second felony offender would best serve the public interest or that of defendant; nor can it be said that defendant now presents an increased threat to the peace and tranquility of the public. The court notes, parenthetically, that the facts under the present indictments are equivocal as well.
It is incumbent on a court to prevent incompetence (see People v Medina, 44 NY2d 199), and to prevent the ill-effects of such incompetence which directly and adversely affects the life or liberty of any defendant.
The court thus finds, after hearing, that the People have not sustained their burden of proving the constitutionality of the manslaughter conviction for the purposes of this hearing which is merely to determine whether or not *292 defendant should be sentenced as a first felony or a second felony offender under section 70.06 of the Penal Law. Therefore, for the purpose of imposing sentence under the two instant indictments, this court holds that the prior felony conviction was obtained in violation of defendant’s constitutional rights, and the court will, therefore, sentence defendant as a first felony offender. The court entertains a reasonable doubt under the circumstances as to the competence of original counsel, and of his advice or lack of advice rendered at the time of arraignment leading up to indictment. Having such a doubt, the court could not, in good conscience, sentence defendant as a predicate felon at this time, especially in view of the fact that a three- and one-half year period (at a minimum) of defendant’s freedom would be at stake. As a first felony offender, the minimum sentence for the crimes charged would be 1 to 3 years, whereas as a predicate felon, the minimum sentence would be 4V2 to 9 years — a substantial difference in jail time.
Accordingly, the court imposes an indeterminate sentence of imprisonment of 1 to 3 years under both indictments, which sentences are to run concurrently, and defendant’s motion with respect to the constitutionality of the prior conviction is granted.

 See Defense Standards set forth by the ABA Project on Standards for Criminal Justice (Standards Relating to Defense Function, 1971, enumerating a series of “basic duties” required by the Constitution, and frequently cited by several jurisdictions; see People v Pope, 23 Cal 3d 412):
“§ 4:1 Counsel must diligently and actively participate in the full and effective presentation of his client’s case.
“s 4:2 Counsel has a duty to investigate, carefully all defenses of fact and of law that may be available to the defendant * * *
“§ 4:4 Counsel should promptly advise his client of his rights and take all actions necessary to preserve them" (emphasis added).