People v Howard (2025 NY Slip Op 00184)

People v Howard

2025 NY Slip Op 00184

Decided on January 14, 2025

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on January 14, 2025

No. 41 SSM 3

[*1]The People & c., Respondent,
v
Donkavius D. Howard, Appellant.

Submitted by Clea Weiss, for appellant.
Submitted by Lisa A. Gray, for respondent.

MEMORANDUM:
The order of the Appellate Division should be affirmed.
Defendant was convicted after a jury trial of burglary in the first degree (Penal Law § 140.30 [2]), assault in the second degree (§ 120.05 [3]), aggravated criminal contempt (§ 215.52 [1]), and resisting arrest (§ 205.30). On appeal defendant argued that his trial counsel was ineffective for among other things failing to object to the admission of certain evidence at trial. On this record, defendant failed to demonstrate that he was denied the effective assistance of counsel (see People v Benevento, 91 NY2d 708, 713 [1998]; see also Strickland v Washington, 466 US 668, 687, 694 [1984]). Defendant's remaining contentions are without merit.

RIVERA, J. (dissenting):

Counsel's performance here was deficient in several respects and no reasonable defense strategy explains those failings. Before trial, counsel's boilerplate motion referenced matters not at issue and lacked factual support in several respects, evincing counsel's failure to properly investigate defendant's case. Counsel also failed to show defendant video crucial to the prosecution's case until shortly before trial—and even then, only after defendant complained to the court and the court ordered counsel to provide the video. During trial, counsel's cross-examination of the victim resulted in admission of defendant's criminal history, even though the trial court had denied the prosecution's request to present that same history should defendant testify. Counsel then failed to object to an obviously-ambiguous jury instruction that might have resulted in a conviction on the top count. Despite these glaring errors, the majority concludes that defendant received constitutionally-acceptable representation. This outcome ignores our precedents and reduces the right to effective counsel to a platitude spoken to appease defendants. Our State Constitution's guarantee of effective assistance ensures the integrity of the process and a fair trial—including for those defendants who appear guilty. Counsel's many errors fell below that standard. I would therefore reverse and order a new trial.
I.
Defendant was charged with burglary in the first degree, assault in the second degree, aggravated criminal contempt, and resisting arrest based on allegations that he broke into his spouse's home, attacked her despite an outstanding order of protection directing him to refrain from such conduct, and then fought with a responding officer. His assigned counsel filed an omnibus motion that miscited the law, failed to allege supporting facts, and referred to drugs, search warrants, confidential informants and wiretap evidence that did not exist. The court inquired of counsel regarding these puzzling and inapposite matters, in particular the reference to a search warrant. Counsel responded: "I include that in all my motions."
Defendant complained to the court several times about counsel's representation. He alleged that counsel had met with him only once and had not given him an opportunity to view the officers' body camera footage, which the prosecution sought to present at trial and which was the subject of an upcoming Huntley hearing. Despite the court's direction that counsel show the videos to defendant, he failed to do so before the hearing or during plea negotiations. Defendant again presented his complaints before trial, alleging that counsel was "ineffective." Counsel admitted that he had not shown defendant the video before the hearing and that defendant had only seen it a week before trial. The court refused to substitute counsel and admonished defendant that it was "amazed by people who get a free lawyer who say 'they didn't come see me enough, they didn't do this, they didn't do that.' "
Defendant protested that defense counsel had been "[i]neffective" and "violated [his] Fourteenth Amendment right." The court then challenged defendant to recite the Fourteenth Amendment and, when defendant was unable, retorted: "[Y]ou don't even know what you're talking about. You're going to trial."
Defense counsel explained to the court: "As far as trial strategy goes, as Your Honor knows, some cases are more difficult than others and I indicated to my client the extreme difficulty of this case" before telling the court that he had "just watched" the bodycam video. Defendant again complained that he was "missing a whole lot" of the discovery materials. The court asked defendant to list what he was missing, to which defendant responded: "I don't know. I didn't study the law," to which the court replied: "You're complaining that you don't have discovery, but you can't tell me what you don't have." Defense counsel noted that the materials were "in [his] office getting ready for trial" and that he was "not carrying it." Defendant began commenting when the court interrupted:
"You know what, get him out of here. I ain't got no time for this BS today."
Before trial, the court denied the prosecution's Sandoval motion to explore defendant's prior bad acts, including a prior conviction for criminal mischief. Nevertheless, defense counsel failed to request redaction of a reference to that conviction from the order of protection that the prosecution used at trial to establish an element of the aggravated criminal contempt charge.
At trial, while cross-examining defendant's spouse, her sister, and his son's nurse, counsel elicited testimony that defendant had been previously incarcerated and had frightened the son's attending nurses. Counsel specifically asked defendant's spouse about defendant's prior unauthorized entries to her home. While she was testifying that she thought defendant was "banging on the door" that night, counsel interrupted to ask her whether "that happened in the past" to which she responded:
"Yes. But it was always a police call after because it went from the door to the basement window of the house and then him busting in basement window of the house. Did you have—you got record of that, right?"
In summation, counsel argued that defendant regularly went to his wife's house and that "the most important thing in this case is this Order of Protection and [the prosecution] ha[d]n't proven that [defendant]—beyond a reasonable doubt— . . . knew about [it]" because defendant never signed it.
As relevant here, during its charge to the jury on the first-degree burglary count, the court explained that "[t]he crime of burglary is complete when a person knowingly enters in a dwelling unlawfully and does so with the intent to commit a crime in the dwelling regardless of whether the person ever commits or even attempts to commit any crime in a dwelling." The court then directed, in pertinent part:
"[T]o find the defendant guilty," of first-degree burglary, the prosecution was required to prove . . . beyond a reasonable doubt . . . that . . . defendant . . . unlawfully entered in a dwelling . . . knowingly [and] . . . with the intent to commit a crime inside the dwelling" and "that in effecting entry or while in the dwelling or immediate flight therefrom[,] the defendant caused physical injury to a person who was not a participant in the crime."
The court further specified:
"A person enters unlawfully in a dwelling when that person has no license or privilege to enter in that dwelling. To have no license or privilege to enter means to have no right, permission, or authority to do so.
A person who is subject to and knows of an Order of Protection directing him to stay away from a building which he knowingly enters, even by invitation or permission, unlawfully enters that building."
The jury found defendant guilty on all counts.
In a 3-2 decision, the Appellate Division affirmed (224 AD3d 1359). The dissent would have reversed on the ground that counsel was ineffective for failing to request redaction of the reference to defendant's criminal history from the order of protection and eliciting testimony during his cross-examinations of the prosecution's witnesses (see id. at 1361-1362 [Ogden and Nowak, JJ., dissenting]). "Most critically," the dissenters noted, counsel elicited testimony from defendant's spouse about defendant's prior bad acts, including the same type of criminal act—breaking into the spouse's house—as alleged here (id. at 1362). One of the dissenting justices granted defendant leave to appeal.
I agree with the Appellate Division dissenters that counsel's performance fell below our State constitutional standard of meaningful representation. In addition to the defects they noted, counsel's boilerplate omnibus motion riddled with erroneous and irrelevant assertions and lacking factual allegations, along with counsel's failure to object to the jury charge on the first-degree burglary count also worked to deprive defendant of a fair trial. No reasonable strategy justifies this conduct.
II.
Under the Sixth Amendment to the Federal Constitution, defense counsel is ineffective when their performance falls below "an objective standard of reasonableness" and prejudices the defendant (Strickland v Washington, 466 US 668, 688 [1984]). The Court has read Article I, Section 6 of the New York Constitution differently, holding that a defendant whose claims fails under Strickland is nonetheless denied effective counsel when the circumstances, "viewed in totality," show that the attorney did not provide "meaningful representation" (People v Benevento, 91 NY2d 708, 712 [1998]). When properly applied, this standard is "somewhat more favorable to defendants" (People v Turner, 5 NY3d 479, 480 [2005]).
Under both standards, an attorney who performs in an objectively reasonable fashion is one who, at a minimum, "take[s] the time to review and prepare both the law and the facts relevant to the defense" (People v Droz, 39 NY2d 457, 462 [1976]). On the other hand, counsel performs deficiently where, due to an unreasonable mistake of law or failure to perform research, counsel overlooks a viable claim and no plausible strategy explains the apparent oversight (see Hinton v Alabama, 571 US 263, 274 [2014] ["An attorney's ignorance of a point of law that is fundamental to (their) case combined with (their) failure to perform basic research on that point is a quintessential example of unreasonable performance under Strickland"]; see also People v Bennett, 29 NY2d 462, 467 [1972] ["Clearly, (where) the record unequivocally demonstrates a complete lack of investigation or preparation whatever on the only possible defense available, the lawyer, far from providing the sort of assistance which the Constitution guarantees to the most lowly defendant, has, in truth, rendered the trial a farce and a mockery of justice"] [internal quotation marks omitted]).
The prejudice component of the federal standard requires the defendant to show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" where "[a] reasonable probability is [one] sufficient to undermine confidence in the outcome" (Strickland, 466 US at 693-694). This standard does not require the defendant to establish it was more "likely than not" that, but for the identified error, they would have obtained a better result (Nix v Whiteside, 475 US 157, 175 [1986]), and the defendant will prevail on a showing that "at least one juror would have harbored a reasonable doubt" were it not for counsel's deficient performance (Buck v Davis, 580 US 100, 120 [2017]). "Our state standard of meaningful representation, by contrast, does not require a defendant to 'fully satisfy the prejudice test of Strickland,' although we 'continue to regard a defendant's showing of prejudice as a significant but not indispensable element in assessing meaningful representation' " (People v Caban, 5 NY3d 143, 155-156 [2005], quoting People v Stultz, 2 NY3d 277, 284 [2004]). In New York, the "prejudice component focuses on the 'fairness of the process as a whole rather than its particular impact on the outcome of the case' " (id. at 156, quoting Benevento, 91 NY2d at 714).
In a nutshell, the question before us is whether counsel's performance compromised the integrity of the process or deprived defendant of a fair trial, regardless of whether guilt appears obvious from the evidence admitted at trial and the reasonable inferences drawn therefrom. Our State Constitution enshrines the right of all defendants to counsel that ensures them a fair and just proceeding regardless of whether they appear guilty. As we have explained, "[w]e do not require effective counsel merely to shield the seemingly innocent, but to protect the 'integrity of the judicial process' by affording the '[t]he worst criminal, the most culpable individual' the same chance to be heard as [*2]'the most blameless member of society' " (People v Debellis, 40 NY3d 431, 439 [2023], quoting People v Donovan, 13 NY2d 148, 153-154 [1963]).
III.
Counsel's errors commenced pretrial, when he failed to demonstrate a basic understanding of defendant's case and a full appreciation of the weight of the evidence against defendant. Counsel conceded that his omnibus motion contained boilerplate references unrelated to defendant's case. In response to the court's inquiry about why the motion referenced nonexistent warrants, counsel explained that he "include[s] that in all [his] motions." But counsel is required to properly investigate and present legal and factual issues specific to their client, not someone else or some generic client (see People v Oliveras, 21 NY3d 339, 346 [2013] ["Essential to any representation, and to the attorney's consideration of the best course of action on behalf of the client, is the attorney's investigation of the law, the facts, and the issues that are relevant to the case"], citing Strickland, 466 US at 690-691; Droz, 39 NY2d at 462). An attorney who fails to argue the relevant details of the prosecution and defense—and, worse, presses completely non-germane points instead—fails to provide meaningful representation.
In addition, a week before trial counsel, admitted to the court that he had not yet shown defendant the police body-camera video. That evidence was central to the prosecution's case and, accordingly, would have been essential to properly advising defendant on whether it was in his best interest to go to trial and, if not, developing a viable plea negotiation strategy.
At trial, counsel did precisely what the court barred the prosecution from doing: eliciting testimony about defendant's prior criminal history. Counsel engaged in open-ended questioning that led to testimony that would have been inadmissible under People v Molineux (168 NY 264 [1901]) and People v Sandoval (34 NY2d 371 [1974]). For example, the nurse responded to one of counsel's questions by telling the jury that defendant "started coming around after his release from jail," a comment that defense counsel did not move to strike. Additionally, when counsel asked the victim's sister—again in open-ended fashion—how often defendant visited his child, the sister testified that defendant had to talk to her to arrange his visits because the nurses were scared of him. Counsel's response led to the repetition of that statement and the additional comment that the nurses "had episodes prior to this one."
Defense counsel's cross-examination of defendant's spouse, the victim, was a textbook example of how to present devastating propensity evidence against a defendant—unfortunately, the defendant was counsel's own client. As the dissent below aptly remarked, "[i]n this prosecution for, inter alia, burglary in the first degree [one] cannot foresee evidence being more prejudicial than testimony elicited by his own counsel that defendant previously committed the same criminal act against the same victim" (224 AD3d at 1362 [Ogden and Nowak, JJ., dissenting]).
In addition to counsel's affirmative conduct there is also counsel's failure to object to the ambiguous jury instruction on the top count of first-degree burglary. Specifically, the court did not explain to the jury that the prosecution had the burden of proving that defendant injured his spouse. We now cannot be certain whether the jury improperly found defendant guilty of this crime based on an injury to the responding officer—which the indictment did not charge—or properly found him guilty based on an injury to defendant's spouse—which the indictment did charge. Counsel's inaction on this alone established deficient performance (see e.g. People v McClendon, 228 AD3d 1276, 1277 [4th Dept 2024] [reversal on ineffective-assistance grounds where "(d)efense counsel did not seek a tailored instruction limited to the theory in the indictment"]).
Even if the evidence of guilt was overwhelming, it cannot be said that these errors, considered in conjunction with one-another, did not undermine "the 'integrity of the judicial process' " or deprive defendant of a fair trial (Debellis, 40 NY3d at 439, quoting Donovan, 13 NY2d at 154). Under our state standard, counsel's overall performance cannot cure any single erroneous action, because that approach both violates Strickland and misconstrues our meaningful-representation jurisprudence by allowing the "single-error standard" to "morph into a misguided per se rule," all "with the absurd result of providing less protection than Strickland" (People v Hayward, __ NY3d __, 2024 NY Slip Op 05243 at *4 [Ct App, Oct 24, 2024] [Rivera, J, concurring]).
Lastly, defendant did not fail to show an absence of a legitimate strategic explanation for the way in which his attorney conducted the trial. "[T]his is not a case where any of these errors can be explained as part of a strategic design" (People v Clermont, 22 NY3d 931, 933 [2013]). For instance, there is no conceivable strategy that justifies counsel's "repeated eliciting of damaging evidence" about defendant's past crimes and time in prison when cross-examining prosecution witnesses (People v Zaborski, 59 NY2d 863, 865 [1983]). That evidence—deemed off-limits to the prosecution—all cast defendant in a terrible light, portrayed him as violent, and suggested his [*3]propensity to commit the offenses charged. Nor is there some reasonable strategy justifying the failure to object to a charge that might have triggered an erroneous conviction on the count carrying the highest penalty. "No competent attorney would do this intentionally" (Turner, 5 NY3d at 484).
I dissent.
On review of submissions pursuant to section 500.11 of the Rules, order affirmed, in a memorandum. Judges Garcia, Singas, Cannataro, Troutman and Halligan concur. Judge Rivera dissents and votes to reverse and order a new trial in an opinion, in which Chief Judge Wilson concurs.
Decided January 14, 2025